IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br><br>UTAH LOCAL GOVERNMENTS TRUST AND ULGIT MARKETING INC.,<br><br>Defendant. | **CORRECTED[*] MEMORANDUM DECISION AND ORDER GRANTING SUMMARY JUDGMENT ON DUTY TO DEFEND;<br>STAYING PROCEEDINGS; AND DENYING MOTION TO STRIKE**<br><br>Case No. 2:12-cv-00176 DN<br><br>District Judge David Nuffer |

## Table of Contents

Case Overview ................................................................................................................................ 1
Motion to Strike .............................................................................................................................. 1
Motion for Summary Judgment ...................................................................................................... 2
    Issues and Claims in this Case and Motions ...................................................................... 2
    Undisputed Facts ................................................................................................................. 3
    Construction of Insurance Policies ..................................................................................... 4
    Duty to Defend and Duty to Indemnify .............................................................................. 4
    Duty to Indemnify Not Ripe for Determination ................................................................. 5
Duty To Defend .............................................................................................................................. 9
    Analysis of the Policy ........................................................................................................ 9
    Effect of Definition of Claims Expenses ......................................................................... 11
    Effect of Exclusions on Duty to Defend .......................................................................... 13
ORDER .......................................................................................................................................... 14

---

[*] This document is a corrected version of the Memorandum Decision and Order Granting Summary Judgment on Duty to Defend; Staying Proceedings; and Denying Motion to Strike, docket no. 49, filed June 4, 2013. The corrections are confined to page 12. Otherwise the document is unchanged.

# CASE OVERVIEW

This case is a dispute between an insurer and an insured, in which each seeks declaration of its rights and duties under the insurance agreement. The duty of the insurer to defend a suit in Utah State court and the duty of the insurer to pay claims in that case are both presented on opposing motions for summary judgment. This order grants summary judgment, declaring that the insurer has the duty to defend the state case, and otherwise stays the case until the conclusion of the state case.

# MOTION TO STRIKE

The insurer filed a motion to strike[1] the insured's cross-motion for summary judgment,[2] because "it was filed well after the dispositive motion deadline. Defendants did not request an extension or otherwise seek the Court's permission to file their untimely motion . . . ."[3] The motion to strike is denied. "Rule 56 expressly declares that 'the court may . . . grant summary judgment for a nonmovant . . . or consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.'"[4] Failure to take this well-briefed opportunity to move this case toward resolution would be contrary to the mutual goal of court and counsel "to secure the just, speedy, and inexpensive determination of every action and proceeding."[5]

---

[1] Docket no. 38, filed April 15, 2013.

[2] [ULGT's] Cross Motion for Summary Judgment and Supporting Memorandum (Cross Motion 37) at v, docket no. 37, filed April 1, 2013.

[3] *Id.* at 2.

[4] Memorandum in Opposition to Aspen's Motion to Strike Defendants' Cross Motion for Summary Judgment at 2, docket no. 40, filed April 24, 3013.

[5] Fed. R. Civ. P. 1

## MOTION FOR SUMMARY JUDGMENT

### Issues and Claims in this Case and Motions

Aspen, the insurer, filed this declaratory action, alleging nine causes of action. The defendants are Utah Local Governments Trust and ULGIT Marketing, Inc. which are collectively referred to as ULGT.

ULGT claims there is no case or controversy as to Aspen's first cause of action, relating to a distinct third party claim (QBE/Unigard Case).[6] That absence of a real issue is dependent on the current posture of that case.[7] Therefore that cause of action will be dismissed without prejudice.

The eight other claims relate to a single third party claim (Jamison Counterclaim), and are at issue. Four causes of action seek a declaration that Aspen's policy does not require a *defense* to the Jamison Counterclaim, and four seek to declare that Aspen has no duty to *defend or indemnify* on the Jamison Counterclaim. ULGT's counterclaim "seeks a declaration from this Court that Aspen is obligated to provide coverage under the Policy and defense [sic] ULGT with respect to the [Jamison] counterclaims."[8]

Both parties move for summary judgment on all claims remaining after adjudication of Aspen's first cause of action.

---

[6] "The first claim [in the Third Amended Complaint] seeks a declaration that Aspen is not obligated to indemnify ULGT with respect to the Unigard/QBE lawsuit – a proposition ULGT does not contest." Cross Motion 37 at v. *See* Third Amended Complaint for Declaratory Judgment at 9, docket no. 30, filed December 14, 2012.

[7] Cross Motion 37 at vi.

[8] Answer to Third Amended Complaint and Counterclaim of Utah Local Governments Trust at 9, ¶ 6, docket no. 34, filed March 8, 2013.

**Undisputed Facts**

The following factual statements from ULGT's motion for summary judgment are not disputed.[9]

1. ULGT is a Utah public agency insurance mutual.

2. ULGT obtained a "Trustees Errors & Omissions Liability Insurance" Policy from Aspen. The Policy names ULGT (both Utah Local Governments Trust and ULGIT Marketing) as insureds. A copy of the Policy is docket entry 2-4 in this case, filed February 13, 2012.

3. ULGT currently is the plaintiff in a lawsuit against Don Jamison, which is pending in the Third Judicial District Court for the State of Utah (Jamison Case). Jamison previously was an insurance agent for Unigard Insurance Company (Unigard). In the Jamison Case, ULGT alleges Jamison improperly received millions of dollars that properly belong to ULGT.

4. Jamison responded to ULGT's claims by, among other things, filing a counterclaim complaint (Jamison Counterclaim). A copy of the Jamison Counterclaim is docket entry 22-4 in this case, filed October 1, 2012. The Jamison Counterclaim asserts five causes of action and are titled: (1) Breach of Contract; (2) Breach of the Covenant of Good Faith and Fair Dealing; (3) Intentional and Negligent Infliction of Emotional Distress; (4) Punitive Damages; and (5) Attorneys Fees and Litigation Expenses. ULGT tendered the defense of the Jamison Counterclaim to Aspen, which Aspen accepted subject to a reservation of rights. Aspen then filed this declaratory judgment action, seeking to establish it has no defense or indemnity obligations with respect to the Jamison Counterclaim.

---

[9] Plaintiff Aspen Specialty Insurance Company's Opposition to Defendants' Cross-Motion for Summary Judgment (Aspen Opposition 41) at 3-5, docket no. 41, filed May 2, 2013. Some of the text of these statements has been deleted because it is not material, and some text has been altered to resolve technical points of dispute. References to documents in the record have been added.

5. The Jamison Case is pending, and judgment has not been rendered on any of the Jamison Counterclaims.

## Construction of Insurance Policies

"An insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts."[10] But insurance policies will be "construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance."[11] "[P]rovisions that limit or exclude coverage should be strictly construed against the insurer."[12]

Utah courts give the language in insurance policies its plain meaning.[13] The wording is given the meaning it has for laypersons in daily usage.[14]

"[T]he terms of insurance contracts . . . should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions."[15] But, "if an insurance contract has inconsistent provisions, one which can be construed against coverage and one which can be construed in favor of coverage, the contract should be construed in favor of coverage."[16]

## Duty to Defend and Duty to Indemnify

Like most insurance agreements, the policy in this case includes a duty to defend, and a duty to indemnity. "An insurer's duty to defend a lawsuit against its insured is both separate and

---

[10] *Alf v. State Farm Fire and Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993).

[11] *USF&G v. Sandt,* 854 P.2d 519, 521 (Utah 1993)(quoting *Richards v. Standard Acc. Ins., Co.,* 200 P. 1017, 1020 (Utah 1921)).

[12] *USF&G v. Sandt,* 854 P.2d at 523.

[13] *Marriott v. Pac. Nat'l Life Assurance Co.*, 467 P.2d 981, 983 (Utah 1970).

[14] *Fuller v. Director of Finance*, 694 P.2d 1045, 1046-47 (Utah 1985).

[15] *Nielsen v O'Reilly*, 848 P.2d 664, 665 (Utah 1992).

[16] *USF&G*, 854 P.2d at 523.

distinct from the insurer's duty to indemnify its insured for liability that is imposed against the insured after trial."[17]  These two duties are thus different in *time* and in *scope.*

The duty to defend is assessed when a claim is asserted against the insured, but the duty to indemnify is determined only when the true scope of the insured's liability has been adjudicated or agreed.[18]  The time gap permits the insured a *defense* when a claim is asserted, but reserves all issues on *payment* by the insurer until the nature of the claim is decided.

"[A]n insurer's duty to defend is broader than its duty to indemnify."[19]  "When there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit . . . ."[20]  "[A]n insurer may have a duty to defend an insured even if . . . the insurer is ultimately not liable to indemnify the insured."[21]

### Duty to Indemnify Not Ripe for Determination

Because the duty to defend arises when the claim or suit initiates, a declaration of that duty is appropriate earlier than a declaration of the duty to indemnify or pay.  The duty to indemnify can only be determined after final adjudication of the merits of the allegedly insured claim.  "The duty to indemnify relates to liability *actually imposed* on the insured for claims falling within the scope of coverage."[22]  For this reason, cases seeking declaratory relief often adjudicate first the duty to defend and defer consideration of the duty to indemnify.  "Put simply, '[a] declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be

---

[17] 14 Couch on Insurance. § 200:3

[18] *Id.*

[19] *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997)

[20] *Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1216 (Utah 2006)(citations and alteration omitted).

[21] *Fire Ins. Exch. v. Estate of Therkelsen*, 27 P.3d 555, 560 (Utah 2001).

[22] *Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC*, 451 Fed.Appx. 745, 749 (10th Cir. 2011)(emphasis added).

determined is not ripe for adjudication.'" [23] "[T]he duty to indemnify must await resolution of the underlying suits."[24]

Illustrating the breadth of the duty to defend and the need to defer the determination of indemnification, *Harbin v Assurance Co. of America*[25] held that an insurer had a duty to defend a case, even though the "state court action judgment . . . sought [recovery] for injuries resulting from an intentional assault" while "[t]he policy impose[d] no liability on the insurer for such injuries."[26] "[T]he claim may ultimately be established to be within policy coverage. While at the moment we cannot conceive of an unintentional assault, the possibility remains that a judgment may ultimately be entered in the state action imposing liability on the basis of unintentional conduct of the insured."[27] "Intent is to be determined . . . by the finder of the facts in the lawsuit brought by the claimant of the injuries."[28] "[R]ecovery may be had on grounds not asserted in the complaint. The possibility that recovery in the state court action may be within the policy coverage cannot be ignored."[29]

Aspen cites a case[30] setting out the framework for a court's discretionary decision to grant or refuse (or defer) declaratory relief. "[T]he district court is not obliged to entertain every justiciable declaratory claim brought before it. The Supreme Court has long made clear that the

---

[23] *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992)(quoting *Maryland Cas. Co. v. Chicago & Northwestern Transp. Co.*, 466 N.E.2d 1091, 1095–96 (1984)).

[24] *United Nat'l Ins. Co,.* 953 F.3d at 338.

[25] 308 F.2d 748 (10th Cir. 1962).

[26] *Id.* at 750.

[27] *Id.*

[28] *Id.* at 749-50.

[29] *Id.* at 750.

[30] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994)

Declaratory Judgment Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'"[31] The case sets forth factors district courts should consider.

- Will a declaration of rights, under the circumstances, serve to clarify or settle legal relations in issue?

- Will it settle the controversy?

- Is the declaratory remedy being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata?

- Will use of a declaratory action increase friction between federal and state courts and improperly encroach upon state jurisdiction?

- Is there an alternative remedy which is better or more effective?[32]

Under these criteria, Aspen's duty to defend should be determined now, but the declaration of a duty to indemnify should be reserved. The duty to defend needs to be decided before the Jamison Case is over. Aspen needs to provide that defense. Proceeding on the duty to indemnify now would require ULGT/ULGIT to advocate the various theories of Jamison's counterclaim in this action while simultaneously resisting those claims in state court. That would be a strange circumstance. And any decision in this case on the duty to indemnify based on a simulated understanding of the Jamison outcome could be entirely defeased by developments in the Jamison Case. Declaratory decision of the duty to pay should not precede resolution of the many uncertainties ahead in the Jamison litigation. Declaratory decision of the duty to pay by this court will not end the Jamison Case. Litigation of all the Jamison theories here would be a wasteful duplication of the state court process. The decision on the duty to indemnify should be deferred until judgment is entered (or settlement reached) in the Jamison Case.

---

[31] *Id.* at 982 (quoting *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)).

[32] *Mhoon*, 31 F.3d at 983.

7

None of the other cases on which Aspen relies help Aspen's position that the duty to indemnify should be determined now.

- *Maryland Casusalty Co. v. Pacific Coal & Oil Co.*[33] holds that a declaratory action between an insured and insurer while a state court action is pending does state a cause of action under the Declaratory Judgment Act because there is an actual controversy.

- *American States Insurance Co. v. Kearns*[34] decided that a lower court was in error for dismissing rather than staying a declaratory action while a state action against the insured was pending. (Notably, that insurer defended the state action while pursuing the federal declaratory action.)

- *Allendale Mutual Insurance Co. v. Kaiser Engineers*[35] permitted a declaratory action regarding subrogation rights – not coverage – to move forward *after* judgment in a state case in favor of the insurer and against the insured, because the statute of limitations on the insurer's subrogation claim would likely expire during the state appeal. "The contingent nature of the right or obligation in controversy will not bar a litigant from seeking declaratory relief when the circumstances reveal a need for a present adjudication."[36] No such circumstances exist here.

- *Seguros Tepeyac, S.A. v. Jernigan*[37] affirmed the validity of a declaratory judgment against the insurer as to future payments yet unmade to a third party who already held a judgment against the insured.

- *In re: Aramark Sports & Enertainment Services., LLC*,[38] decided under admiralty law and the Shipowner's Liability Act of 1851,[39] held that enforceability of an indemnity and exculpatory provision in a boat rental contract was ripe for declaratory decision even though the negligence claims between the owner/lessor and lessee and boat passengers were not yet resolved. But significantly, the court held the owner/lessor had to "defend against the claims [of the boat occupants] (and resolve them) before seeking indemnification from [the boat lessee]."[40]

Decision on the duty to indemnify will be reserved until resolution of the Jamison Counterclaims.

---

[33] 312 U.S. 270 (1941).

[34] 15 F.3d 142 (9th Cir.1994).

[35] 804 F.2d 592 (10th Cir. 1986).

[36] *Id.* at 594.

[37] 410 F.2d 718, 729 (5th Cir. 1969).

[38] No. 2:09–CV–637–TC, 2012 WL 3776859 (D. Utah Aug. 29, 2012),

[39] 46 U.S.C. §§ 30501–30512.

[40] *In re Aramark*, 2012 WL 3776859, at *7.

## DUTY TO DEFEND

### Analysis of the Policy

The policy contains:

- Declaration (two pages);
- Schedule of Applicable forms (one page);
- Trustees Errors & Omissions Liability Policy (seven pages, nine major sections);
- Employment Practices Liability Insurance Coverage Endorsement (three pages, six major sections, replacing Exclusion E. in the Trustee's Policy); and
- Nine endorsements.

The Trustees Errors & Omissions Liability Policy separately states the duty to indemnify and the duty to defend. The duties are described in two distinct sections.

### I. INSURING AGREEMENTS

Trustees Errors and Omissions Liability Policy

The Company will pay on behalf of the **Insured** loss which the **Insured** shall become legally obligated to pay as a result of a **Claim** first made against the **Insured** during the **Policy Period or** the **Extended Reporting Period**, if applicable, for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

Provided, however, as a condition precedent to any such coverage under this Insuring Agreement, the **Insured** shall report such **Claim** to the Company as soon as practicable but in no event later than sixty (60) days after the termination of the **Policy Period** or **Extended Reporting Period**, if applicable.

### V. DEFENSE AND SETTLEMENT

The Company shall defend any **Claim**, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The Company shall investigate the **Claim** and, with written consent of the **Insured**, shall settle or compromise any **Claim** as it deems appropriate. If the **Insured** refuses to consent to any settlement or compromise recommended by the Company and acceptable to the claimant, then the Company's liability for the **Claim** shall not exceed the amount which the Company would have paid for **Damages** and **Claim Expenses** at the time the **Claim** could have been settled or compromised.[41]

---

[41] Docket no. 2-4, filed February 13, 2012.

Both of these sections use the defined term "Claim" which appears in Section III, Definitions.

> **III. DEFINITIONS**
>
> **B. Claim** means:
> 1) a written demand for civil damages or other civil relief that appears reasonably likely to involve payment under this Policy commenced by the Insured's receipt of such demand,
> 2) civil proceeding commenced by the service of a complaint or similar pleading, or [sic][42]

The first clause of the "Claim" definition makes reference to coverage under the policy. The second clause does not.

There is no dispute that the Jamison Counterclaim is a "civil proceeding commenced by the service of a complaint or similar pleading."[43] Therefore it appears from the plain language of the policy that Aspen is obligated to defend the Jamison Counterclaim.

This is an unusual duty to defend provision. In reported cases which quote the duty to defend clause under consideration, the clauses have some reference to coverage, similar to the reference contained in the first clause of this policy's definition of "Claim." For example, in *Benjamin v Amica Mutual Insurance Co*.[44] the clause read:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury ... caused by an occurrence to which coverage applies, [Amica] will:
> ....
> 2. Provide a defense at [Amica's] expense by counsel of [Amica's] choice, even if the suit is groundless, false or fraudulent.[45]

In *Fire Insurance Exchange v. Rosenberg*, the clause stated: "At our expense and with attorneys of our choice, we will defend an insured against any covered claim or suit.[46] The clauses

---

[42] *Id.*

[43] *Id.*

[44] 140 P.3d 1210 (Utah 2006).

[45] *Id.* at 1214.

[46] 930 P.2d 1202, 1203 (Utah Ct. App. 1997).

considered in those cases wrap consideration of coverage into the duty to defend. Aspen's policy does not.

Because most policy language relates the duty to defend to coverage, cases speak of the need to compare the policy to the complaint, or even to external facts, if the policy requires that comparison. "[W]hen the terms of an insurance contract condition the duty to defend upon allegations contained on the face of the complaint, 'extrinsic evidence is irrelevant to ... determin[e] ... whether a duty to defend exists.'"[47] This is sometimes referred to as an "eight-corners" analysis.[48] "On the other hand, when policy terms define the scope of the duty to defend in reference to something other than the allegations in the complaint, a court may look beyond the text of the complaint . . . ."[49] This may be necessary if the policy qualifies the duty to defend by some external fact.

In this policy, the insurer's duty to defend any "civil proceeding commenced by the service of a complaint or similar pleading" does not refer to coverage under the policy or to any external fact. Therefore, under the Aspen policy section establishing a duty to defend, Aspen must defend the Jamison Counterclaim because ULGIT and ULGT are insured by Aspen.

### Effect of Definition of Claims Expenses

Aspen argues that the definition of Claims Expenses in the policy defeases its broad duty to defend.[50]

> **C. Claims Expenses** means that portion of loss consisting of reasonable and necessary fees (including attorneys' fees and experts' fees) and expenses incurred in the defense or

---

[47] *Equine Assisted Growth and Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 736 (Utah 2011)(citing and quoting *Fire Insurance Exchange v. Estate of Therkelsen,* 27 P.3d 555, 561 (Utah 2001).

[48] *Equine Assisted Growth,* 266 P.3d at 737-38.

[49] *Id.* at 736.

[50] Plaintiff Aspen Specialty Insurance Company's Reply in Support of its Motion for Summary Judgment (Aspen Reply 39) at 8, docket no. 39, filed April 18, 2013.

appeal of a **Claim**, but shall not include the wages, salaries, benefits or expenses of the **Insureds**.

This definition alone would not exclude the Jamison Counterclaim from the duty to defend, because it is a "civil proceeding commenced by the service of a complaint or similar pleading" and thus qualifies as a Claim. Nothing in the duty to defend section or Claim definition refers to Claims Expenses. But Aspen also bases its argument on the entirely separate sections of EXCLUSIONS and INSURING AGREEMENTS.

> [T]he preamble to Section II, Exclusions . . .makes clear that the Exclusions . . . may be used to negate a duty to defend. Specifically, Section II of the Policy states:
> The Company is not obligated to [sic] **Damages** or **Claims Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:
> [various exclusions are listed]
>
> . . . .
>
> Aspen has no duty to defend and/or pay "Claims Expenses" if any exclusion or the application of multiple exclusions applies to preclude coverage for all claims at issue.[51]

Aspen's fallacy is its attempt to tie the policy exclusions to its duty to *pay* established in Section I into the duty to *defend* established in Section V. Aspen claims "the preamble to Section II, Exclusions, makes clear that the Exclusions may be used to negate a duty to defend."[52] But the preamble to Section II, Exclusions says no such thing. Aspen quotes Section II, Exclusions (supra) but omits in its quotation the key word "*pay*." The preamble actually reads:

> The Company is not obligated to pay **Damages** or **Claims Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

---

[51] *Id.*.

[52] *Id.* .

The policy exclusions in Section II apply to the duty to *pay* established in Section I, and do not, by the express language of the preamble to Section II, apply to the duty to *defend* established in Section V.  The question of whether Aspen may not be obligated to indemnify for Claims Expenses arising out of excluded subject matter will be reserved for later decision,[53] but Aspen is obligated to defend all Claims.

## Effect of Exclusions on Duty to Defend

As has been stated before, most insurance agreements tie the duty to defend to the coverage of the policy.  In this policy, Aspen is only obligated to defend unfiled demands if they (a) seek civil damages or other civil relief; (b) appear reasonably likely to involve payment under the policy; and (c) the insured has received the demand.  But Aspen's duty to defend civil proceedings has no such limitations.  And the Exclusions in the policy deal only with the duty to pay, not the duty to defend.  The language in reported cases about the duty to defend depending on "whether the complaint alleges a risk within the coverage of the policy"[54] assumes that the policy terms subject the duty to defend to a limitation related to *payment* coverage.  There is no generalized law outside the terms of insurance agreements limiting the duty to defend to the terms of payment coverage.  The parties' agreement controls.

Given the broad language of the duty to defend which arises when suit is brought against the insured, it is not necessary to examine the payment coverage exclusions.

---

[53] Allowing Aspen to repudiate defense of the Jamison Case (as it has done) and then assert it is not obligated to pay defense expenses incurred by ULGT involves many issues not briefed or ripe.

[54] *Benjamin,* 140 P.3d at 1214 (citations and quotations omitted).

13

**ORDER**

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that ULGT's Cross Motion for Summary Judgment[55] is GRANTED IN PART AND DENIED IN PART and Aspen Specialty Insurance Company's Motion for Summary Judgment[56] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Aspen Specialty Insurance Company has the duty to defend the Jamison Counterclaim. ULGT is granted summary judgment on its counterclaim that Aspen must defend "ULGT with respect to the counterclaims Jamison has asserted against ULGT."[57] The issue of attorneys' fees and expenses on this claim is reserved.

IT IS FURTHER ORDERED that Aspen's first cause of action of the Third Amended Complaint for declaratory judgment is dismissed without prejudice.

IT IS FURTHER ORDERED that the balance of this case is stayed pending resolution of the Jamison Case. The parties shall file status reports on the Jamison Case on January 31, April 30, July 31 and October 31 of each year, and within fourteen days of resolution of that case. This case will be administratively closed pending the resolution of the Jamison Case.

---

[55] Docket no. 37, filed April 1, 2013.

[56] Docket no. 31, filed February 28, 2013.

[57] Answer to Third Amended Complaint and Counterclaim of Utah Local Governments Trust at 9, ¶ 6, docket no. 34, filed March 8, 2013.

IT IS FURTHER ORDERED that trial and related dates are STRICKEN.

IT IS FURTHER ORDERED that Plaintiff's motion to strike[58] is DENIED.

Signed June 19, 2013.

BY THE COURT

_____
District Judge David Nuffer

---

[58] Docket no. 38, filed April 15, 2013.